UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

**PREPARED FOOD PHOTOS, INC. f/k/a**
Adlife Marketing & Communications Co., Inc.,

                      **Plaintiff,**

            v.                                  3:23-CV-170
                                                  (FJS/ML)

**PARK PLACE RESTAURANT, LLC d/b/a**
Park Place Sports Bar & Grill,

                      **Defendant.**
_____

**APPEARANCES**                                           **OF COUNSEL**

**DESOUZA LAW, PA**                        **DANIEL DESOUZA, ESQ.**
3111 North University Drive
Suite 301
Coral Springs, Florida 33065
Attorneys for Plaintiff

**KENNEY SHELTON LIPTAK**          **DANIEL CARTWRIGHT, ESQ.**
**NOWAK LLP**
4615 North Street
Jamesville, New York 13078
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER[1]

### I. BACKGROUND

      Plaintiff filed a complaint in this matter on February 8, 2023. *See* Dkt. No. 1, Complaint.

Plaintiff has a "business of licensing high-end, professional photographs for the food industry.

*See id.* at ¶ 6. Plaintiff uses a commercial website to offer a subscription service providing the

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Filing System generates, which are located in the upper right corner of those pages.

ability to access and license "tens of thousands of professional images." *See id.* at ¶ 7. Plaintiff's clients, who are usually grocery stores, restaurants, and food service companies, pay a minimum of $999.00 per month for this access. *See id.* at ¶ 8. Plaintiff does not license or sell individual photographs but, instead, uses the monthly subscription service to "maintain its impressive portfolio" of images. *See id.* at ¶ 9. Plaintiff owns those photographs and serves as licensing agent for them. *See id.* at ¶ 10. The licenses are "for limited use by Plaintiff's customers," and "Plaintiff's standard terms include a limited, non-transferable license for us[e] of any photograph by the customer only." *See id.* The terms are "clear that all copyright remains with Plaintiff[.]" *See id.* Customers may not "transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity." *See id.*

This case involves a photograph titled "'ChickenTender004." *See id.* at ¶ 11. Plaintiff alleges that it registered the picture with the Register of Copyrights on September 20, 2016. *See id.* at ¶ 12. Plaintiff remains the owner of the work and was owner at all relevant times. *See id.* at ¶ 13.

Defendant, a restaurant and bar in Norwich, New York, promotes its business through a website, on social media, and in other forms of advertising. *See id.* at ¶¶ 14-15. Plaintiff alleges that Defendant published the photograph on its website at some time after Plaintiff registered the copyright for the picture. *See id.* at ¶ 16. Plaintiff includes a picture allegedly taken from that website that shows Plaintiff's copyrighted picture. *See id.* at ¶ 17 and Exhibit "B" attached thereto. Plaintiff further alleges that Defendant lacks any sort of license or permission to use the photograph in that way. *See id.* at ¶ 18. Plaintiff contends that Defendant used the photograph "for commercial use – namely, in connection with the marketing of Defendant's business." *See id.* at ¶ 19. Plaintiff asserts that Defendant copied the work from the internet and used the

photograph for that purpose without seeking permission to do so. *See id.* at ¶ 20. Plaintiff discovered the unauthorized use on February 28, 2020. *See id.* at ¶ 21. Plaintiff's agent contacted Defendant and notified Defendant in writing of the unauthorized use of the photograph. *See id.* The parties have not been able "to negotiate a reasonable license for the past infringement of the" photograph. *See id.*

Plaintiff's one-count complaint alleges copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501 *et seq.* and seeks damages. After service of the complaint, Defendant filed a motion to dismiss. *See* Dkt. No. 11. The Court closed the case after the parties notified the Court that the matter had settled, but the notice asked the Court for leave to reopen if the settlement agreement was not finalized in thirty days. The Court reopened the case when Plaintiff notified the Court that the settlement agreement had not been finalized. *See* Dkt. No. 24. Defendant filed the pending motion to enforce the settlement on August 23, 2023. *See* Dkt. No. 31. Plaintiff opposes the motion.

## II. DISCUSSION

**A.      Motion to enforce settlement**

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (citation omitted). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve" that party "of that [] choice simply because" that party's "assessment of the consequences was incorrect." *Id.* (citing *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994)). However, "'[i]f the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and

signed.'" *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 827 (2d Cir. 2019) (*per curiam*) (quoting *Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493, 494 (1970)).  "'The point of these rules is to give parties the power to contract as they please, so that they may, if they like, bind themselves orally or by informal letters, or that they may maintain "complete immunity from all obligation" until a written agreement is executed.'" *Id.* at 830 (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (quoting 1 A. Corbin, *Corbin on Contracts* § 30, at 98 (1963))).  "Deciding whether the parties intended to be bound in the absence of a writing requires" a court "to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Powell*, 497 F.3d at 129 (citing *Winston [v. Mediafare Entm't Corp.]*, 777 F.2d [78,] 80 [(2d Cir. 1985)]) (other citation omitted).

On June 28, 2023, the parties provided the Court with a "Joint Notice of Settlement."  *See* Dkt. No. 18.  The parties wrote that they "herby give notice that the parties have reached a settlement in principle.  The parties are in the process of finalizing a written settlement agreement and anticipate filing a stipulation of dismissal with prejudice within the next 30 days."  *See id.*  Attorneys for both parties signed the notice.  *See id.*  On June 30, 2023, the Court issued an order dismissing the case by reason of settlement.  *See* Dkt. No. 19.  The Court dismissed the case "without prejudice to the right of any party to reopen this action within thirty (30) days of the date of this Order if the settlement is not consummated."  *See id.* at 1.

On July 12, 2023, Defendant's counsel filed a letter motion, addressed to Magistrate Judge Lovric, regarding the progress of the settlement and requesting a conference.  *See* Dkt. No.

21.  Specifically, counsel noted that the "parties [had] recently reached a tentative settlement agreement."  *See id.*  However, "since that agreement," the parties had "some disagreement over the inclusion of provisions in a settlement release agreement regarding confidentiality and imposition of attorneys' fees in the event of any subsequent litigation."  *See id.*  In light of that disagreement, counsel asked Magistrate Judge Lovric to schedule a conference to help the parties work through these issues.  *See id.*  Magistrate Judge Lovric responded with a Text Order declining to schedule a conference because the case was closed.  *See* Dkt. No. 22.  Magistrate Judge Lovric wrote that, "[i]f the parties are seeking Court intervention in this dismissed and closed case, they must comply with" the order closing the case.  *See id.*

On July 25, 2023, Plaintiff filed a letter requesting that the Court reopen the case.  *See* Dkt. No. 23.  Plaintiff noted that the Court's June 30, 2023 Order gave the parties thirty days to make an application to reopen the case.  *See id.* at ¶ 2.  Plaintiff wrote that, since providing the Court with notice of settlement, the parties had "not been able to agree regarding including certain provisions in the settlement agreement and therefore ha[d] reached an impasse in their settlement discussions."  *See id.* at ¶ 3.  Therefore, Plaintiff requested that the Court reopen the case "to allow the parties to litigate their respective claims/defenses."  *See id.* at ¶ 4.  In a Text Order dated July 27, 2023, the Court reopened the case.  *See* Dkt. No. 24.  The Court then granted Defendant's request to reinstate the earlier-filed motion to dismiss and set a briefing schedule.  *See* Dkt. No. 29.  Defendant then filed the pending motion to enforce the settlement.  *See* Dkt. No. 31.

Defendant argues that the parties had an enforceable agreement to settle the case and alleges that "[w]hile the motion to dismiss was pending, the parties reached a settlement" for a certain sum that Defendant alleges "represented a full and fair settlement of the claim."  *See* Dkt.

No. 31-1, Declaration of Daniel Cartwright, at ¶¶ 28-29.  Defendant claims that, "at no time did the parties discuss other terms or conditions such as confidentiality or attorneys' fees in the event of subsequent litigation."  *See id.* at ¶ 30 (emphasis removed).  Defendant claims that Plaintiff's acceptance of the settlement offer was "unequivocal" and that, when Plaintiff informed the Court of the settlement, Plaintiff had not made any mention to Defendant "of any other terms or conditions (either orally or verbally)."  *See id.* at ¶ 31.  According to Defendant, "only after the settlement was agreed to via e-mail between the parties and after the Court was informed" of the agreement did "Plaintiff raise[] additional terms and conditions (including confidentiality and imposition of attorneys' fees to the prevailing party of any subsequent litigation) that were never previously raised."  *See id.* at ¶ 32.

Defendant provides the Court with a series of emails between counsel to support its claims.  *See* Dkt. No. 31-2.  On May 30, 2023, Plaintiff's counsel wrote Defendant's counsel to "follow up . . . regarding my client's counteroffer and whether you have been able to speak with you[r] adjuster[.]"  *See id.* at 12.  Plaintiff's counsel also asked about previous conversations concerning a potential third party responsible for the infringement.  *See id.*  Defendant's counsel responded on June 8, 2023, by asking Plaintiff's counsel for additional information about the alleged infringement.  *See id.* at 11.  Plaintiff's counsel responded with that information on June 21, 2023.  *See id.* at 10.  That same day, Defendant's counsel responded that providing "evidence substantiating the allegation that the defendant posted" the offending picture online was necessary for Defendant's insurance carrier to evaluate the claim.  *See id.*  Plaintiff's counsel responded on June 21, 2023 with "a screenshot of the photograph on the defendant's website."  *See id.*  Defendant's counsel then responded that "[i]n an effort to resolve this case without the need for further litigation (and especially, prior to your having to file a brief in opposition to the

pending" motion to dismiss "I have been authorized to settle this case for [amount redacted.] Please let me know whether your client will agree." *See id.* at 9. Plaintiff's counsel responded with a counteroffer. *See id.* at 8. Plaintiff's counsel wrote again on June 26, 2023, informing Defendant's counsel that Plaintiff's response to the motion to dismiss was due in two days and offering to engage in a telephone conference in hopes of settling the case. *See id.* at 8. Defendant's counsel responded that Plaintiff's proof of infringement was not strong enough to settle the case for the amount Plaintiff suggested but offered to continue discussions. *See id.* at 7. Plaintiff's counsel responded later that day that "I appreciate your time and efforts in endeavoring to get this matter resolved. I spoke with my client, and we will accept [amount redacted]." *See id.* Plaintiff's counsel added, "I will draft a Notice of Settlement and send a Settlement Agreement for your review." *See id.* Defendant's counsel replied, "Sounds good." *See id.* at 6.

An hour later, Plaintiff's counsel sent another email: "Please see attached. Please make any changes in redline. If there are no changes to the Notice of Settlement, please sign for filing today. If there are no changes for the settlement agreement, please have your client sign and return to me for my client's signature." *See id.* Defendant's counsel responded, "Please see attached for REVISED Settlement Agreement (The Joint Notice of Settlement is fine as drafted)." *See id.* at 5. Plaintiff's counsel responded shortly thereafter by attaching a "revised Settlement Agreement" and noting that "I do have a couple of points. First, is there a reason you do not want the confidentiality provision to remain? Second, I prefer the attorney's fees stay in, but I did try to limit the language." *See id.* Defendant's counsel returned that email on June 30, 2023, stating that he had received the email with the "revised settlement agreement." *See id.* at 3. Defendant's counsel stated, "I have had an opportunity to review the revised settlement

agreement but must state that we cannot agree to it as drafted." *See id.* Defendant's counsel provided detailed objections to certain provisions of the agreement. *See id.* at 3-4.

Defendant's counsel next provides an email to Plaintiff's counsel dated July 12, 2023. That email provides as follows: "I am in receipt of your below email and have had an opportunity to review your proposed changes and reasons for keeping certain provisions intact. Upon consideration, we remain of the opinion that the confidentiality and attorneys' fees provisions should be removed as it was never discussed prior to settlement and my client has no interest in being subject to it." *See id.* at 2. Defendant's counsel suggested that, "[i]n the event that an agreement cannot be reached, we may consider requesting a conference with the court to discuss how to move forward." *See id.* Plaintiff's counsel responded that day by informing Defendant's counsel that Plaintiff did not object to Defendant seeking a conference with the Court. *See id.* at 1. The next day, Plaintiff's counsel informed Defendant's counsel that "[w]e are required to draft a motion to re-open the case in order to seek assistance from the court. I am not sure if it needs to be joint; however, please let me know if you will be drafting one." *See id.*

Plaintiff's response to the motion includes the Declaration of Daniel DeSouza, Plaintiff's counsel. *See* Dkt. No. 33-1. Mr. DeSouza related that he is counsel for Plaintiff in this matter and has been assisted by the attorney who corresponded with Defendant's counsel. *See id.* at ¶ 2. Mr. DeSouza denies that Plaintiff ever represented that "acceptance of Defendant's monetary offer" meant that "settlement would be effective/binding upon the financial term alone." *See id.* at ¶ 4. Although neither Mr. DeSouza or Defendant's counsel provided a copy of the proposed settlement agreement to the Court, Mr. DeSouza points out that the "introductory paragraph of the agreement states" as follows: "**THIS SETTLEMENT AGREEMENT** (the "Settlement Agreement") is entered into as of the date this Settlement Agreement is fully executed by each of

the Parties hereto (the "<u>Effective Date</u>").  *See id.* at ¶ 9.  According to the proposed agreement, the funds for settlement needed to be paid "***within twenty-one (21) days from the Effective Date***."  *See id.* at ¶ 10.  The proposed agreement also contained a "merger clause," which meant that the document would "supersede[] any prior agreements" and that document "set forth the entire understanding of the parties with respect to the settlement[.]"  *See id.* at ¶ 11.  Mr. DeSouza represents that "Defendant's counsel did not edit/amend/delete these provisions in any of the back-and-forth drafts/email comments (other than to change payment from 14 days to 21 days.)"  *See id.* at ¶ 12.  Mr. DeSouza further contends that Defendant has not paid any sum or attempted to pay any sum on the alleged agreement and relates that, if Defendant had offered such payment, "Plaintiff has indicated that it would reject the payment if a written settlement agreement, containing the confidentiality/attorneys' fees provisions, was not executed between the parties."  *See id.* at ¶ 14.

The parties disagree as to whether this evidence supports a finding that the parties entered into an enforceable settlement agreement.  Both rely on the factors that the Second Circuit set forth in *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir. 1985):

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.* at 80 (citations omitted).

"'No single factor is decisive, but each provides significant guidance.'"  *Powell*, 497 F.3d at 129 (quoting *Ciaramella [v. Reader's Digest Ass'n.]*, 131 F.3d [320,] 323 [(2d Cir. 1997)]). The Court will assess each of these factors to determine whether there was an enforceable agreement to settle this matter, making reference to the evidence that the parties have provided.

### *1. Whether there has been an express reservation not to be bound without a writing*

As a general matter, Defendant insists that the parties formed a contract when Plaintiff agreed to accept the amount that Defendant offered to settle the case. With regard to this first factor, Defendant notes that no final agreement ever existed but argues that, because "there was no express reservation <u>not</u> to be bound" by the oral agreement, there was not a requirement that a writing issue. *See* Dkt. No. 31-3, Defendant's Memorandum of Law, at 9.

In *Winston*, the Second Circuit emphasized that "it is the intent of the parties that will determine the time of contract formation. To discern that intent, a court must look to 'the words and deeds [of the parties] which constitute objective signs in a given set of circumstances.'" *Winston*, 777 F.2d at 80 (quoting [*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)]). The facts that Defendant has provided in this case make clear that, although the parties agreed to an amount necessary to settle the case, they also agreed that a written agreement was necessary to settle this matter. Evidence to support this conclusion is contained in the emails between counsel for both sides. The parties agreed to an amount for settlement but then exchanged drafts of a "proposed settlement agreement." They could not agree on those terms but, instead, decided to return to the Court for guidance on how to resolve the case. Although the parties have not provided the Court with any complete draft settlement agreement, Defendant does not dispute that the portions of the proposed agreement provided contain an explicit recognition that the terms of the agreement must be in writing. Moreover, the notice of settlement, which both parties signed, made clear that the agreement was one made in principle and which needed to be finalized. The Court concludes, based on these facts, that the parties clearly contemplated a writing to finalize the agreement. Therefore the Court finds that the first

*Winston* factor strongly favors a finding that no enforceable oral agreement to settle the case existed.

### 2. Whether there has been partial performance of the contract

Defendant contends that it partially performed on the agreement by agreeing to discontinue the litigation. *See* Dkt. No. 31-3 at 9. Assuming that the agreement was as Defendant represents – payment of a sum in exchange for ending the litigation – Defendant's signing of the agreement to discontinue the litigation represents partial performance. The Court finds, however, that this factor does not weigh heavily in favor of enforcing the agreement because the evidence makes clear that Plaintiff considered execution of a written agreement necessary to end the matter. Indeed, the Court finds that Defendant's version of events – that the parties settled the case for a sum and that Defendant never contemplated signing a written agreement – incredible based on Defendant's counsel's conduct in trading versions of the written parameters of an agreement between the parties. In fact, Defendant's counsel offered a "revised" version of the settlement agreement that Plaintiff's counsel proposed.

### 3. Whether the parties have agreed upon all the terms of the contract

The Court concludes that the third factor – whether the parties have agreed upon all the terms of the contract and thus no additional writing is necessary – weighs heavily in favor of finding that no enforceable agreement existed. Courts "have held that even 'minor' or 'technical' changes arising from negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing." *Powell*, 497 F.3d at 130 (citing *Winston*, 777 F.2d at 82-83). The above-cited evidence indicates that counsel for

both sides sent various written proposals for a settlement agreement to each other multiple times. The parties proposed the inclusion or exclusion of certain language and never came to an agreement on what that language should be. Such language was not minor or technical but went to the issues of confidentiality and attorneys' fees, major components of any agreement to end a case, especially one regarding intellectual property. The evidence makes clear that Plaintiff represented that it could not sign any settlement agreement that did not contain such language. The actions of Plaintiff's counsel also make clear that, without the existence of a settlement agreement that contained such language, the parties would have to return to court to litigate the case.

Defendant argues that the parties had agreed to the terms of the agreement. Defendant contends that, "as shown by the attached e-mail correspondence between the parties' counselors . . . issues of confidentiality and attorneys' fees were never raised prior to agreement, and therefore, they were never part of the agreement." *See* Dkt. No. 31-3 at 11. The Court could only accept that position if the Court agreed that the agreement between the parties was only that Defendant – who seeks to enforce the agreement – would pay a sum to settle the case. The aforementioned evidence, however, makes clear that, although Plaintiff accepted the amount offered as a sum to settle the case, it expected a written agreement that included certain terms before concluding the matter and never expressed any sense that the matter was concluded until the parties signed such a document.

### *4. Whether the agreement is of the type that would normally be reduced to writing*

The fourth factor, whether the agreement is of the type that would normally only be in writing, also favors Plaintiff. Courts look to the nature of the agreement to determine whether

the agreement would normally be one reduced to writing. *See Powell*, 497 F.3d at 130-31. Courts note that "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciarmella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997) (citations omitted). As a general matter, "'[w]here, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable[.]'" *Id.* (quoting *Winston*, 777 F.2d at 83). Moreover, "the complexity of the underlying agreement is an indication of whether the parties reasonably could have expected to bind themselves orally." *Id.* (citing *R.G. Group*, 751 F.2d at 76; *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262-63 (2d Cir. 1984) (parenthetical omitted)).

Plaintiff acknowledges that the proposed settlement agreement is not overly complex or long but does contain requirements that bind Defendant for years, such as a requirement that Defendant remove and cease to use the photograph in perpetuity. *See* Dkt. No. 33 at 9. Plaintiff's counsel's declaration also indicates that the confidentiality provisions in the agreement are the types of provision typically contained in such agreements and that such agreements are in writing. *See* Dkt. No. 33-1 at ¶¶ 6-8. He also relates that "[i]t has always been my standard practice to reduce settlements in principle to writing and to include confidentiality/attorneys' fees clauses . . . except in cases where confidentiality is prohibited (i.e., a settlement with a state agency subject to public records laws)." *See id.* at ¶ 8.

The Court finds that the proposed agreement had purposes that could only be achieved by reducing the agreement to writing. The Court accepts Plaintiff's counsel's representations about the nature of such agreements. The Court finds that a requirement to remove a photograph from social media and to keep that photograph out of future advertising is the sort of agreement that

would normally require a writing that names and defines the photograph and names and defines the locations where the photograph could not be displayed.

In summary, the Court finds that the *Winston* factors weigh heavily in favor of Plaintiff's position. The parties clearly contemplated a written agreement to settle this case and never agreed to the terms of that agreement. Although they agreed to a dollar amount of settlement, both parties recognized that the dollar amount was only one part of the settlement. They never came to terms on the rest. The Court, therefore, denies Defendant's motion to enforce the settlement.

**B.     Motion to dismiss for failure to state a claim**

In addressing a motion to dismiss for failure to state a claim, the court must accept "'all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quotation omitted). This rule does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting [*Bell Atl. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955 [(2007)]).

In this case, Plaintiff alleges copyright infringement. "In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir.

2010) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (internal quotation marks and emphasis omitted)). This standard "'is of necessity vague.'" *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). Making the "substantial similarity" determination is "'one of the most difficult questions in copyright law.'" *Id.* (quoting 4-13 Nimmer on Copyright § 13.03 (2009)). That difficulty, combined with the complicated factual issues involved in such an assessment, means that "questions of infringement have traditionally been reserved for the trier of fact." *Id.* (citations omitted).

Although decisions on substantial similarity are often reserved for the jury, courts "have repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law[.]" *Id.* Courts may decide this issue on a motion to dismiss. *See id.* at 64. When considering such motions "a district court may consider 'the facts as asserted within the four corners of the complaint,' together with 'the documents attached to the complaint as exhibits, and any documents incorporated in to the complaint by reference.'" *Id.* (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). Moreover, in copyright cases "'the works themselves supersede and control contrary descriptions of them,' . . ., including 'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *Id.* (quotations and other citations omitted). Discovery is not necessary to make this decision "because 'what is required is only a visual comparison of the works.'" *Id.* (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991)).

In this case, Defendant argues that a "reverse image search" of the photograph in question revealed "expansive use of" that picture. *See* Dkt. No. 11-1 at 6. Defendant points to thirteen uses of the photograph in various commercial settings and notes that "[n]one of the aforementioned websites appear to indicate that the photograph was used pursuant to Plaintiff's

grant of permission, that it was a copyrighted photograph, or that there was any other legal impediment restricting its use." *See id.* at 9. Defendant then purports to demonstrate that Plaintiff's claim fails to plausibly allege a copyright violation. *See id.* at 10-14.

Defendant, however, does not really address the sufficiency of the allegations in the complaint. After a long block quotation that lays out the elements of a copyright infringement claim, Defendant admits that Plaintiff has sufficiently alleged ownership of a valid copyright. *See id.* at 11. Defendant disputes, however, that Plaintiff has validly alleged that Defendant copied the work in question. Defendant employs internet searches, that it claims, indicate that the website in question did not contain images that Plaintiff had copyrighted. *See id.* at 13 (stating that, "[c]learly, a review of these photographs from the Wayback Machine URL shows that Defendant's website did not display the alleged copyrighted work at issue, and therefore, cannot be a basis for establishing copyright infringement"). Defendant also contends that clicking the link on the website named in Plaintiff's complaint as containing the copyrighted image "leads to Defendant's website, which does not display the photograph in question." *See id.* Defendant also contends that the complaint constitutes "copyright trolling" and should be dismissed. *See id.* at 14. Finally, citing to a case from the Southern District of New York, in which the court granted a motion for default judgment, Defendant contends that, because Plaintiff alleges that Defendant "likely found the photograph at issue on the Internet and decided to use it without knowledge of any copyright protection," Plaintiff has admitted that it cannot demonstrate willful conduct. *See id.* at 15.

Plaintiff responds that its complaint contains copies of the image in question and the image on Defendant's website, and it is clear that they are identical. *See* Dkt. No. 32, Plaintiff's Memorandum of Law, at 3. Under those circumstances, Plaintiff insists that it has stated an

infringement claim. *See id.* Moreover, the images that Defendant cites in its motion form the internet archive are not referenced anywhere in the complaint and are not relevant to a motion to dismiss. *See id.* at 4. Indeed, Defendant includes photographs and images from their website *after* the alleged infringement occurred. *See id.* Those images are, thus, irrelevant to the allegations in the complaint. *See id.* Plaintiff further contends that allegations of copyright trolling are irrelevant to whether its complaint states a claim. *See id.* at 5. Plaintiff also disputes that an allegation that Defendant found the image on the internet and used it represents an allegation that Defendant was an "innocent infringer" entitled to dismissal. *See id.* at 5-6.

  The Court finds Defendant's arguments unpersuasive. First, Defendant's use of internet searches to dispute the allegations in the complaint is not appropriate in a motion to dismiss. However, although Defendant might be able to undermine Plaintiff's allegations about what material was on the website on the date in question, the complaint itself contains allegations and images sufficient plausibly to allege that, on the date in question, Defendant displayed the copyrighted image on its website without permission. The images in the complaint showing unauthorized use are identical. After discovery, Defendant may be able to undermine these claims. At this point in the litigation, however, Plaintiff has validly alleged unauthorized use of a copyrighted image.

  Second, Defendant's concern about "copyright trolling" has nothing to do with the sufficiency of the allegations in the complaint. Plaintiff's motivation for bringing a complaint against Defendant has nothing to do with whether Plaintiff has alleged facts sufficient to show that Defendant violated Plaintiff's registered copyright in the image.

  Finally, the Court is unpersuaded that the allegation that Defendant cited, *i.e.*, that "[u]pon information and belief, Defendant located a copy of the Work on the internet, and rather

than contact Plaintiff to secure a license, simply copied the Work for its own commercial use," *see* Dkt. No. 1, Complaint, at ¶ 20, constitutes an admission that Defendant's use was "innocent." The Court does not read that paragraph to allege that Defendant did not know that the image was copyrighted. Drawing all inferences in Plaintiff's favor, the Court reads the paragraph to say that Defendant copied the image without permission and violated the copyright. Nothing in the paragraph admits that Defendant was unaware of the copyright on the image. Moreover, even if the Court could read the paragraph that way, such a reading would not foreclose recovery on that claim. Innocent infringement does not excuse the infringer but, instead, reduces the statutory damages for which the infringer is liable. *See, e.g., D.C. Comics, Inv. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) (stating that, "'in a case where the infringer sustains the burden of proving, and the court finds that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of the copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200'" (quoting 17 U.S.C. § 504(c)(2)).

In sum, for all the above-stated reasons, the Court denies Defendant's motion to dismiss.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss, *see* Dkt. No. 11, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to enforce the settlement in this case, *see* Dkt. No. 31, is **DENIED**; and the Court further

     **ORDERS** that this matter is referred to Magistrate Judge Lovric for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 25, 2024
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge